1
2
3
4
5
6
7
8

9                    UNITED STATES DISTRICT COURT

10        CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

11
12
13
14

15  RHONDA MASTRO,                )  No. ED CV 08-01178 SH
                                  )
16                  Plaintiff,    )     MEMORANDUM DECISION
                                  )
17          v.                    )
                                  )
18  MICHAEL J. ASTRUE,            )
    Commissioner of Social Security )
19  Administration,               )
                                  )
20                  Defendant.    )
                                  )
21  _____ )

22                        I. PROCEEDINGS

23          This matter is before the Court for review of the Decision by the

24  Commissioner of Social Security denying plaintiff's application for Supplemental

25  Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §

26  400 et seq.  Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case

27  may be handled by the undersigned.  The action arises under 42 U.S.C. § 405(g),

28  which authorizes the Court to enter judgment upon the pleadings

1   and\transcript of the record before the Commissioner.  The plaintiff and the

2 defendant have filed their pleadings, the defendant has filed the certified transcript

3 of record, and the parties have filed a Joint Stipulation.  After reviewing the matter,

4 the Court concludes that the Decision of the Commissioner should be reversed and

5 remanded.

6                     II.  <u>BACKGROUND</u>

7       On May 26, 2006, plaintiff Rhonda Mastro filed an application for SSI,

8 alleging disability beginning August 4, 1984, due to attention deficit hyperactivity

9 disorder, bipolar disorder, heart murmur, and asthma.  (AR 10, 76-78).  Plaintiff's

10 application was denied initially on October 17, 2006, and again denied upon

11 reconsideration on April 6, 2007.  (AR 56-68).  Thereafter, on May 17, 2007,

12 plaintiff filed a timely written request for hearing to review the denial of her

13 application for SSI, and was afforded a hearing before an Administrative Law

14 Judge ("ALJ") on May 8, 2008.  The ALJ issued an unfavorable Decision on June

15 26, 2008 (AR 8-17).  The ALJ found that plaintiff has not been under a disability

16 within the meaning of the Social Security Act.  The ALJ also found that plaintiff's

17 multiple limitations did not preclude her from performing light work as defined in

18 20 C.F.R. 416.967(b), except that plaintiff is limited to routine, repetitive, entry

19 level work and working with things rather than people.

20       On July 16, 2008, plaintiff filed a Request for Review of the Hearing

21 Decision.  The Appeals Council denied review of the decision on July 24, 2008

22 (AR 1-3).  This action followed.

23       Plaintiff makes six challenges to the ALJ's determination.  Plaintiff alleges

24 that the ALJ erred by failing: (1) to properly consider the State Agency physician

25 Dr. K. D. Gregg's findings regarding plaintiff's multiple limitations; (2) to

26 properly consider the consultative examining physician's opinion regarding

27 plaintiff's moderate limitations; (3) to properly consider the consultative

28 examining physician's opinion regarding plaintiff's mental impairments and GAF

score of 45; (4) to properly consider the lay witness testimony of plaintiff's mother, Jo Mastro; (5) to pose a complete hypothetical question to the vocational expert; (6) to properly consider the type, dosage, and side effects of plaintiff's prescribed medications.  Each of plaintiff's contentions will be addressed in turn.

## III.  DISCUSSION

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence must be more than a mere scintilla, but not necessarily a preponderance.  *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003).  This Court cannot disturb the Commissioner's findings if those finding are supported by substantial evidence, even though other evidence may exist which supports plaintiff's claim.  *See Torske v. Richardson*, 484 F.2d 59, 60 (9th Cir. 1973), *cert. denied*, *Torske v. Weinberger*, 417 U.S. 933 (1974); *Harvey v. Richardson*, 451 F.2d 589, 590 (9th Cir. 1971).

A person is "disabled" for the purpose of receiving benefits if the person is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The plaintiff has the burden of establishing a prima facie case of disability.  *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (citing *Galant v. Heckler*, 753 F.2d 1452).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, disability benefits are denied.  Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the

1   person does not have a severe impairment, it is determined whether the impairment

2   meets or equals one of a number of "listed impairments."  If the impairments meet

3   or equal a "listed impairment," the person is conclusively presumed to be disabled.

4   Fourth, if the impairment does not meet or equal the "listed impairments," it is

5   determined whether the impairment prevents the person from performing past

6   relevant work.  If the person can perform past relevant work, benefits are denied.

7   Fifth, if the person cannot perform past relevant work, the burden shifts to the

8   Commissioner to show that the person is able to perform other kinds of work.  20

9   C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

10

11  *ISSUE NO. 1:* **The ALJ properly considered the State Agency physician Dr. K. D. Gregg's findings regarding plaintiff's multiple limitations.**

12          Plaintiff contends that the ALJ ignored without explanation State Agency

13  physician, Dr. K. D. Gregg's findings on plaintiff's Mental Residual Functional

14  Capacity ("MRFC").  Plaintiff argues that the ALJ rejected those findings without

15  providing legally sufficient reasons.  The ALJ stated the medical consultant for the

16  State Agency, Dr. Gregg, asserted that plaintiff "is able to understand, remember

17  and carry out simple tasks; she can maintain adequate persistence and pace over the

18  course of an 8 hour day/ 40 hour week; she can avoid normal hazards in the

19  workplace.  She can interact appropriately with supervisors and co-workers.  She

20  should avoid work with the public."  (AR 15, 189).  Plaintiff further contends Dr.

21  Gregg, in his MRFC assessment, reported that plaintiff has multiple moderate

22  limitations in her ability to understand and remember detailed instructions.

23  However, plaintiff does not recognize that Dr. Gregg also reported plaintiff is not

24  significantly limited in her ability to remember locations and work-like procedures

25  and to understand and remember very short and simple instructions.  Furthermore,

26  plaintiff argues Dr. Gregg reported plaintiff is moderately limited in her ability to

27  maintain attention and concentration for extended periods, perform activities

28  within a schedule, maintain regular attendance, and be punctual within customary

1  tolerances, sustain an ordinary routine without special supervision, and interact

2  appropriately with the general public.  (AR 187-88).  Plaintiff fails to mention that

3  Dr. Gregg also found plaintiff to be not significantly limited in her ability to carry

4  out very short and simple instructions, to make simple work-related decisions, to

5  complete a normal workday and workweek without interruptions from

6  psychologically based symptoms and to perform at a consistent pace without an

7  unreasonable number and length of rest periods.  Dr. Gregg also reported that

8  plaintiff is not significantly limited in her ability to ask simple questions, to

9  maintain socially appropriate behavior, and to be aware of normal hazards and to

10  take appropriate precautions.  *See id.*

11       In response, defendant argues that the ALJ did credit Dr. Gregg's findings of

12  mild restriction because the ALJ adopted Dr. Gregg's determination that plaintiff

13  had mild difficulties with daily activities and moderate difficulties with social

14  functioning and concentration, persistence, and pace with no repeated episodes of

15  decompensation (AR 10, 15, 184).  Defendant further contends that this

16  determination fully supports the MRFC for routine, repetitive, entry level work and

17  working with things rather than people.  (AR 11).

18       Although the ALJ did not specifically address that it was Dr. Gregg's report

19  which was being cited, the ALJ did directly discuss his opinion in the review of Dr.

20  Gregg's findings.  Based on these findings, the ALJ concluded that plaintiff could

21  perform light work except that she is limited to routine, repetitive, entry level work

22  and working with things rather than people.  Since Dr. Gregg's 2006 assessment of

23  plaintiff was thoroughly summarized and discussed by the ALJ in his opinion, this

24  claim lacks merit and therefore, this Court finds that the ALJ properly considered

25  Dr. Gregg's findings.

26

27  ***ISSUE NO. 2:* The ALJ properly considered the consultative examining**

28

**physician Dr. John S. Woodard's opinion regarding plaintiff's moderate limitations.**

Plaintiff asserts that the ALJ did not properly consider and specifically explain whether he accepted or rejected consultative examining physician, Dr. John S. Woodard's opinion.  Plaintiff argues that the ALJ did not properly consider the plaintiff's slight to moderate limitations as discussed in Dr. Woodard's opinion.  Defendant responds that in adopting his findings on plaintiff's Residual Functional Capacity ("RFC"), the ALJ considered and gave significant weight to the report by Dr. Woodard.  (AR 14-15).  Dr. Woodard diagnosed plaintiff with cyclothymic disorder (mild bipolar disorder), but opined that plaintiff's impairments are slight to moderate for withstanding normal stresses and pressures in the workplace and for interacting with the public, slight for interacting with supervisors and coworkers, for maintaining concentration and attention, and for performing detailed, complex tasks, and none for performing simple, repetitive tasks.  (AR 14-15, 162).  Dr. Woodard further stated in his opinion that incapacity is none for working on a continuous basis without special supervision and moderate for completing a normal workweek without interruption.  *See id.*

The ALJ properly considered Dr. Woodard's opinion in reaching the conclusion that the plaintiff is limited to routine, repetitive, entry level work and working with things rather than people.  Since the ALJ not only thoroughly summarized Dr. Woodard's opinion, but also properly assessed the opinion in his decision, this claim lacks merit and therefore, this Court finds that the ALJ properly considered Dr. Woodard's findings.

1    *ISSUE NO. 3:* **The ALJ properly considered the consultative examining**
2    **physician's opinion regarding plaintiff's mental impairments and GAF score of 45.**

3        Plaintiff contends that the ALJ failed to properly consider the Adult

4 Psychiatric Evaluation conducted by consultative examining physician, Dr. S.

5 Thacker on June 26, 2006. Dr. Thacker reported that plaintiff's mood was

6 depressed and anxious, that her thought content was paranoid/ persecutory, and

7 that she experienced hallucination. Plaintiff was diagnosed with bipolar disorder

8 and was assessed with a GAF score of 45. (AR 203). Defendant responds that the

9 ALJ reasonably explained why he did not give controlling weight to these reports

10 as well as to the report by Katy King, a mental health specialist, who was an

11 unacceptable medical source. (AR 14-16, 218). *See* 20 C.F.R. § 416.913 (2008).

12 Defendant further argues that the ALJ reasonably gave more weight to the reports

13 of Drs. Woodard and Gregg and that the GAF score of 45 was not relevant to an

14 assessment of disability or functional limitations. (AR 203). The ALJ noted, for

15 example, that plaintiff was improved on medication (AR 14-16, 40-42, 216). Her

16 intellectual functioning was grossly intact (AR 15, 163). She had a relatively full

17 range of daily activities (AR 15, 46-47, 107-14). Moreover, she "was able to

18 adequately communicate during the hearing and relate specific details of her

19 impairments." (AR 15, 35-49).

20        Although the ALJ did not discuss this June 26, 2006 note, he did discuss

21 other notes written by the same psychiatrist, Dr. Thacker, which affirm defendant's

22 arguments that plaintiff's medication improved her mental health condition, that

23 she was attending group therapy for her depression, and that she was getting along

24 with family and liked to draw. (AR 14, 220-30). Furthermore, although a GAF

25 rating might be helpful to an ALJ in formulating a RFC assessment, it is not

26 essential, and failure to refer to such assessment is not erroneous. In this case,

27 plaintiff's claim lacks merit because the ALJ did discuss the plaintiff's GAF score

28 of 45 (AR 13) and considered the findings of Dr. Thacker, even without directing

1  attention to the June 26, 2006 note.  (AR 14-15).

2  **ISSUE NO. 4:** **The ALJ properly considered lay witness testimony of**
3  **plaintiff's mother, Jo Mastro.**

4         Plaintiff asserts that the ALJ did not properly consider and failed to state

5  reasons for disregarding lay witness testimony of plaintiff's mother, Jo Mastro.

6  Plaintiff's mother reported in a function report, dated July 6, 2006, that plaintiff

7  has mood swings from her bipolar condition which sometimes results in

8  unexpected hostile reactions, and that her conditions affect her ability to talk, hear,

9  complete tasks, concentrate, understand, and get along with others (AR 112).  In

10 response, defendant argues that the ALJ partially rejected the mother's testimony

11 for specific and germane reasons.  (AR 15-16, 107-114).  For example, the ALJ

12 noted that the mother's statements indicate that plaintiff is capable of performing

13 daily activities; plaintiff takes care of the animals, helps with household chores,

14 makes dinner, does the dishes, reads, and watches television.  (AR 15-16, 109).

15 Furthermore, the ALJ noted that these statements also indicate that plaintiff

16 socializes with family members and family friends on a daily basis.  (AR 16, 111).

17        "[D]escriptions by friends and family members in a position to observe

18 [plaintiff's] symptoms and daily activities have routinely been treated as competent

19 evidence." *Sprague v. Bowen* , 812 F.2d 1226, 1232 (9th Cir. 1987); *see Nguyen v.*

20 *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony as to a

21 claimant's symptoms or how an impairment affects ability to work is competent

22 evidence[.]").  If the ALJ rejects the testimony of lay witnesses, the ALJ must give

23 "reasons germane to each witness whose testimony he rejects." *Smolen v. Chater*,

24 80 F.3d 1273, 1288 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

25 1993).  "[W]here the ALJ's error lies in a failure to properly discuss competent lay

26 testimony favorable to the claimant, a reviewing court cannot consider the error

27 harmless unless it can confidently conclude that no reasonable ALJ, when fully

28

1  crediting the testimony, could have reached a different disability determination."

2  *Stout v. Commissioner*, 445 F.3d 1050, 1056 (9th Cir. 2006).

3       In the instant case, the ALJ did provide some reasons for disregarding the

4  testimony of lay witness Jo Mastro.  However, the mother provided information

5  that did not establish any greater disability than was found by Drs. Woodard and

6  Gregg and the ALJ, that plaintiff was moderately impaired at most and was capable

7  of performing light work.  Fully crediting the mother's testimony, this Court can

8  confidently conclude that regardless of whether the ALJ rejected the mother's

9  testimony for specific and germane reasons, no reasonable ALJ could have reached

10  a different disability determination.

11
   **ISSUE NO. 5:** **The ALJ erred in properly posing a complete hypothetical**
12  **question to the vocational expert.**

13       This Court finds that plaintiff's fifth claim of error does have merit.  Plaintiff

14  asserts the ALJ's hypotheticals propounded to the vocational expert failed to

15  include each of plaintiff's particular limitations and restrictions and was therefore

16  legally insufficient.  Plaintiff contends that the hypothetical questions failed to set

17  out factors bearing upon plaintiff's mental impairments, mood swings, and bipolar

18  disorder.  Defendant responds that the ALJ's hypothetical posed to the vocational

19  expert reflected his RFC finding which was supported by the record.  Furthermore,

20  defendant argues that the ALJ was entitled to rely on the vocational expert's

21  testimony.  *Moore v. Apfel*, 216 F.3d 864, 869-70 (9th Cir. 2000).

22       If a claimant's impairment or combination of impairments do not meet or

23  equal a listed impairment, and if a claimant cannot perform past relevant work, the

24  Commissioner has the burden of showing that a person has the RFC to perform

25  other kinds of work in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137,

26  141-42; *Embrey v. Brown*, 849 F.2d 418, 422 (9th Cir. 1988).  The Commissioner

27  can meet this burden by using the testimony of a vocational expert or by reference

28  to the Medical-Vocational Guidelines.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162

(9th Cir. 2001).  Hypothetical questions posed to the vocational expert must set out all the functional limitations of a claimant.  *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995).  The assumptions contained in an ALJ's hypothetical to a vocational expert must be supported by the record; otherwise, the opinion of the vocational expert that a claimant has residual working capacity has no evidentiary value.  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

At the hearing, the ALJ asked the vocational expert the following hypothetical:

> "Assume a hypothetical individual of claimant's age, education, no work history.  Assume this person is restricted to a light range of work.  No work on unprotected heights.  No work on dangerous machinery.  The person requires a relatively clean-air environment, meaning non industrial-level pollutants, gasses, fumes.  The claimant's capable of frequent climbing, balancing, stooping, kneeling, crouching, and crawling.  This person is restricted to routine, repetitive tasks, entry-level work, working primarily with things rather than with people.  No production quotas in the nature of assembly line or conveyor belt.  I don't mean assembly line, I mean piecemeal, piecework or conveyor belt.  Is there work in the regional or national economy such a person could perform?"  (AR 53).

The ALJ followed this question with a second hypothetical:

> "Assume a hypothetical individual the same restrictions as in one.  This person would be off task at least 20 percent of the time due to psychological-based symptoms.  Is there work such a person could perform?" (AR 54).

The ALJ relied on the vocational expert's testimony in determining that plaintiff could perform alternative work such as garment sorter, mail clerk, and bench assembler.  (AR 54).  Here, the ALJ did not present the vocational expert with all of the limitations the ALJ found the plaintiff to have.  As noted above, Dr. Woodard, the consulting psychiatrist, found plaintiff to have cyclothymic disorder

1    and to be subject to mood swings and depression.  Nonetheless, the ALJ did not

2    include such findings in the second hypothetical he posed to the vocational expert.

3    Rather, the ALJ merely posed hypothetical questions that included physical

4    restrictions and a general recognition of plaintiff's psychological-based symptoms.

5         The ALJ's failure to pose all of plaintiff's limitations to the vocational

6    expert renders the expert's opinion without evidentiary value.  Since the ALJ did

7    not present the vocational expert with a hypothetical containing all of plaintiff's

8    limitations, remand of this case is warranted.  See *Andrews v. Shalala*, 53 F.3d

9    1035, 1044 (9th Cir. 1995).

10        Furthermore, although the second hypothetical generally addresses

11   plaintiff's mental limitations, there is no evidentiary basis for the ALJ posing a

12   scenario where the hypothetical individual would be "off task" at least 20 percent

13   of the time.  (AR 54).  This numerical determination is unsupported by the record

14   and likely arbitrary.  Moreover, the fact that the vocational expert's response to the

15   second hypothetical was that there would not be any work for such an individual,

16   as the individual would not be working at a competitive rate, indicates that a

17   remand for further proceedings is necessary.

18        Therefore, this Court remands the case based on plaintiff's fifth claim of

19   error for the purpose of restating the hypothetical questions to the vocational expert

20   to include all of the limitations which the ALJ found, and to include those

21   limitations which may be ones the ALJ should have found but were improperly

22   rejected, to properly reflect plaintiff's mental limitations, and to determine whether

23   the percentage of time which the plaintiff would be "off task" due to

24   psychological-based symptoms can be calculated.

25

26

27   ***ISSUE NO. 6:* The ALJ properly considered the type, dosage, and side effects**

28   **of plaintiff's prescribed medications.**

1    Plaintiff asserts that the ALJ did not properly consider the type, dosage, and

2  side effects of plaintiff's prescribed medications of Celexa (for depression) and

3  Risperdal (for bipolar disorder).  Plaintiff contends that the increases in plaintiff's

4  prescribed medications as indicated by her treating physician on two separate

5  treatment notes on August 28, 2006 and February 4, 2008 were not properly

6  discussed by the ALJ in his decision.  Defendant responds that even the pages

7  plaintiff cites to report "no side effects".  (AR 199, 221).  Defendant further notes

8  that the ALJ specifically found that plaintiff's mental impairment was treated with

9  medication management, that she improved, and that she denied side effects to her

10  physicians.  (AR 13-14, 152, 194-211, 219-30).  Furthermore, defendant points out

11  that the plaintiff has the burden of establishing disability, and that includes the

12  burden of establishing that the side effects of medication contribute to her

13  disability.

14    First, it is unclear whether there was even an increased dosage of plaintiff's

15  prescription of Celexa, because the treatment note preceding the August 28, 2006

16  note indicated that plaintiff was prescribed 40 mg of Celexa.  (AR 200).  Such a

17  note demonstrates that there was in fact a decrease in the dosage of plaintiff's

18  prescription of Celexa, from 40 mg to 20 mg.  However, even if there was an

19  increase in dosage of both medications, plaintiff's claim that the ALJ failed to

20  discuss the side effects of plaintiff's prescribed medications lacks merit.

21    Defendant correctly indicates that the pages plaintiff cites to do not indicate

22  presence of any side effects.  Plaintiff points to nothing more than possible side

23  effects, which are not supported by any medical evidence.  Not only is there an

24  absence of medical evidence, but plaintiff failed to mention during the hearing that

25  her prescribed medications resulted in any side effects.  Plaintiff has not specified

26  what side effects she has suffered, or how those side effects affected her ability to

27  work.  Rather, she testified that when she is on her medications, she does "okay".

28  (AR 41).  Plaintiff also testified that she has problems with her concentration, and

1   that although they do not go away, they get better with medication.  (AR 49).

2   Moreover, the ALJ partially discounted plaintiff's subjective complaints, a finding

3   she does not contest (AR 11-17).

4                                        IV.  <u>ORDER</u>

5          For the foregoing reasons, the decision of the Commissioner should be

6   reversed, and the matter is remanded for further proceedings in accordance with the

7   decision.

8

9   Date: <u>June 29, 2009</u>

10                               _____/ S /_____
                                      STEPHEN J. HILLMAN
11                                UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28